UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 05:12-148-KKC

RONALD MILLS and
MALINDA MILLS, PLAINTIFFS,

v. **OPINION AND ORDER**

MARK S. RIGGSBEE., *et al.*, DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the motion *in limine* filed by the Defendants, Mark S. Riggsbee and Task Force Tips, Inc. (collectively, "Defendants"), seeking to preclude Plaintiffs, Ronald Mills and Malinda Mills (collectively, "Plaintiffs") and Third-Party Defendant, City of Berea, Kentucky, from introducing any evidence or referring to a videotape made by Plaintiff Ronald Mills of the Berea Fire Department security video monitor [DE #72]. This matter is fully briefed and is ripe for review.

**I. Background**

Defendant Task Force Tips is the manufacturer, producer and/or seller of various firefighting equipment, including a device known as the Blitz-Fire Monitor fire hose water regulator. The Blitz-Fire Monitor is a device that sits on the ground and is attached to the end of a fire department fire hose and allows firefighters to fight fires without hand-holding the fire hose. Part of the monitor's design includes an automatic shut-off system.

Plaintiffs contend that Plaintiff Ronald Mills, a firefighter for the City of Berea, was injured on October 13, 2011, when he attended a sales demonstration of the Blitz-Fire Monitor performed

at the Berea Fire Department by Defendant, Mark Riggsbee. For purposes of the demonstration, the monitor was attached to a fire hose attached to a Berea Fire Department pumper truck. During the demonstration, the fire hose came loose from the pumper truck, knocking Mills off his feet and causing him injury. Plaintiffs claim that the fire hose detached from the truck because of "water hammer," a condition that the monitor was supposed to eliminate. "Water hammer" occurs from the back flow of water when a fire hose is shut off too quickly, causing a build-up of pressure. Defendants deny that water hammer occurred and instead claim that the accident was caused by a faulty fire hose.

Three weeks after the accident, Plaintiff Ronald Mills and his daughter took a video camera to the Berea Fire Department and recorded the Fire Department's security video footage from the day of the accident. Plaintiffs' recording shows a computer screen, which displayed four separate scenes recorded from different angles by four different security cameras, none of which were focused on the side of the fire truck where the accident occurred. The cameras are positioned on the front, rear, and both sides of the fire station. During the demonstration, the fire truck being used was parked on one side of the fire station. A camera positioned on this area shows one side of the truck with the fire hose coming out behind it. However, the side of the truck where the fire hose was connected to the pumper (and where the accident occurred) is completely obstructed from view. From the video, it appears that the fire hose ran through the fire station to the other side of the station where Riggsbee's demonstration was taking place. A camera positioned on this side of the fire station shows the demonstration. However, the portion of the fire hose running through the station cannot be seen. During portions of the video that Plaintiff seeks to introduce, the camera (which was being operated by Plaintiff or his daughter) zooms in to focus on one particular frame at the

exclusion of the others. Thus, the viewers of the video taken by Plaintiffs are unable to see the activity captured by the other cameras. In addition, the video re-plays portions of the security footage.

Due to an apparent oversight, the actual security video from the Berea Fire Department was erased before a copy was made. Thus, Plaintiffs seek to introduce this "video of a video" as evidence at trial.

## II. Standard for Rule 402 and Rule 403 Motions *in Limine*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court discussed the admissibility of evidence as follows:

> Rule 402 provides the baseline:
>
>> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.
>
> "Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401. The Rule's basic standard of relevance thus is a liberal one.

*Id*. at 587. The Sixth Circuit recognized many years ago that a court should not "deprive plaintiffs of their legitimate right to place before the jury the circumstances and atmosphere of the entire cause of action which they have brought into the court, replacing it with a sterile or laboratory atmosphere...." *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 217 (6th Cir. 1982).

However, under Rule 403 of the Federal Rules of Evidence, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." Fed. R. Evid. 403. Federal courts have held that Rule 403 is an extraordinary remedy and carries a strong presumption in favor of admissibility. *U.S. v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001). In *In re Air Crash Disaster*, 86 F.3d 498 (6th Cir. 1996), the Sixth Circuit explained:

> Rule 403 does not exclude evidence because it is strongly persuasive or compellingly relevant – the rule only applies when it is likely that the jury will be moved by a piece of evidence in a manner that is somehow unfair or inappropriate. The truth may hurt, but Rule 403 does not make it inadmissible on that account.

*Id.* at 538. "Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *Koloda v. General Motors Parts Div., General Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983).

### III.  Analysis

Defendants argue that, because the original security footage was erased, Plaintiffs cannot establish the authenticity of the video or that what was recorded on the video camera by Plaintiff and his daughter is all of the footage contained on the Berea Fire Department video storage file. As characterized by Defendants, Plaintiffs' video is confusing and misleading because it shows a collage of various points of reference in and around the Berea Fire Station. Defendants also point out that Plaintiffs' video recording is subject to manipulation and editing or subjective focusing by Plaintiffs, without being subject to verification by Defendants as to the contents of the original security footage. Thus, Defendants argue, Plaintiffs' "video of the video" is unreliable.

Having reviewed the video, the Court agrees that, even if the video could be sufficiently authenticated, it should be excluded from trial pursuant to Rule 403. The probative value of the video is limited. Although it shows Riggsbee performing the demonstration, it does not show the most critical event in this case, the separation of the fire hose from the pumper truck. Essentially,

4

all that can be seen is the fire truck with a hose extending behind it and Ronald Mills walking from inside the fire station to the side of the truck where the hose was connected to the truck, which is the side opposite from the security camera's view. Plaintiffs' contend that the video shows that the fire hose "jumps" before the accident. Plaintiffs say that their expert, Ron Hopkins, will testify that this "jump" was a result of a water hammer. However, at the *Daubert* hearing on Hopkins, Plaintiffs' counsel admitted that fire hoses may jump and jerk for other reasons besides water hammer. Although Plaintiffs' counsel argues that Hopkins will testify that this particular jump was more than the jump that occurs when a fire hose is turned off or on, at no time has Plaintiff identified how or why this "jump" was distinguishable, other than because his expert says so. At any rate, although the video may be relevant to showing that the fire hose jumps before the accident occurs, given the myriad of reasons that a fire hose might "jump," this probative value is limited, at best.

In contrast, the potential for unfair prejudice, confusing the issues and misleading the jury as a result of introducing this evidence is significant. Defendants point out that, although the split-screens appear to show the events being captured by all four security cameras simultaneously, the counters for the cameras are sometimes inconsistent. Additionally, there are significant time jumps (as much as 17 seconds) by the counters for some of the cameras, rendering the time counters shown on the security footage unreliable. Thus, the timing of the events captured on the video is, at best, confusing. Further, the video is potentially misleading. When making the video, Plaintiff and/or his daughter chose to selectively focus on some screens and to exclude others. In addition, although the video shows the fire hose "jump," even Plaintiffs' counsel admits that there may have been other reasons for the fire hose to jump, such as the hose being shut off. Indeed, because the video does not show the entire fire hose, it is also possible that a person physically moved the hose. Regardless,

5

permitting the jury to view a video of confusing security footage that shows an incomplete view of the accident scene and has been selectively focused by Plaintiff and/or his daughter is misleading and causes a significant danger of undue prejudice to Defendants.

In response to Defendants' motion, Plaintiffs point to Fed. R. Evid. 1003, which provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Here, however, Plaintiffs overlook that the video does not meet the definition of a "duplicate" under Fed. R. Evid. 1001, which provides that a "duplicate" refers to "a counterpart produced by a mechanical, photographic, chemical, electronic, or other equivalent process or technique that accurately reproduces the original." Fed. R. Evid. 1001. For example, an actual copy of the security footage may qualify as a "duplicate." Here, the video is not a true copy of the original but is instead a video of a computer monitor playing portions of the original security footage. In addition, at times the maker of the video (Plaintiff and/or his daughter) makes editorial decisions on how the footage is seen by choosing to selectively focus on certain portions of the security footage and re-playing other portions multiple times. Thus, the video does not meet the requirements of a "duplicate" under Rule 1001.

Even if the video were to fit within definition of a "duplicate," admission of the video would be unfair to Defendants. Although Plaintiffs may not have "tampered" with the video in the sense that the editing decisions made while filming the video were done in bad faith, the fact remains that the video manipulates the security footage. Moreover, there has been no suggestion that Defendants Riggsbee or Task Force Tips, Inc. had anything to do with the destruction of the original security footage. The parties seem to agree that the security footage was mistakenly erased by the Berea Fire

6

Department.  In these circumstances, it would be unfair to Defendants - who no longer have access to the original - to admit a video that has been manipulated by Plaintiffs.  Thus, the video is inadmissible under Rule 1003.

For all of the foregoing reasons, balancing the limited probative value of the videotape against the significant potential for undue prejudice, confusion of the issues and misleading the jury that would result from its admission, the Court finds that the videotape should be excluded from trial.  Accordingly, Defendants' Motion in Limine will be granted.

Because the Court finds that the video is inadmissible at trial, Defendants' argument that Plaintiffs should not be permitted to refer to the times shown on the counter at the bottom of the various split-screens of the security footage need not be addressed.  However, the Court notes that the questionable reliability of the time-counters shown on the video further demonstrates that the confusing and potentially misleading nature of the video.

Accordingly, the Court, being fully and sufficiently advised, hereby **ORDERS** that Defendants' motion *in limine* seeking to preclude Plaintiffs and Third-Party Defendant from introducing any evidence or referring to a videotape made by Plaintiff Ronald Mills of the Berea Fire Department security video monitor [DE #72] is **GRANTED**.

This December 3, 2013

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY