UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 12-148-KKC

RONALD MILLS and
MALINDA MILLS                                                                PLAINTIFFS

v.                                    **OPINION & ORDER**

MARK S. RIGGSBEE, *et al.*                                                   DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Summary Judgment filed by Defendants, Mark S. Riggsbee and Task Force Tips, Inc. (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 56(a), seeking dismissal of the claims of the Plaintiffs, Ronald Mills and Malinda Mills (collectively, "Plaintiffs") [DE #49]. Also pending before the Court are: Defendants' motion for partial summary judgment dismissing Plaintiffs' failure to warn claim and finding that Plaintiff, Ronald Mills, was negligent as a matter of law [DE #48]; Defendants' motion *in limine* to exclude any evidence or reference that the Defendants' advertised and promoted the BlitzFire Monitor as eliminating water hammer [DE #73]; and Defendants' motion *in limine* to preclude Berea firefighters from offering opinions as to causation at trial [DE #86]. These motions are fully briefed and are ripe for review.[1]

---

[1]Plaintiffs argue that Defendants' motion *in limine* to preclude opinion testimony by Berea firefighters [DE #86], filed on October 31, 2013, was not timely filed in accordance with the October 24, 2013 deadline for motions *in limine* set forth by the Court's Amended Scheduling Order. Defendants argue that their motion only became necessary when Plaintiffs disclosed on October 24, 2013 that they intend to read the depositions of these witnesses, which contained their respective opinions on causation, at trial. Defendants promptly filed their motion *in limine* within seven days of receiving Plaintiffs' disclosures and Plaintiffs had the opportunity to respond. Plaintiffs do not purport to have been prejudiced by the timing of Defendants' motion. In these circumstances, the Court finds it proper to consider the merits of Defendants' motion *in limine*.

## I. FACTUAL BACKGROUND

Defendant Task Force Tips is the manufacturer, producer and/or seller of various firefighting equipment, including a device known as the BlitzFire Monitor fire hose water regulator. The BlitzFire Monitor is a device that sits on the ground and is attached to the end of a fire department fire hose and allows firefighters to fight fires without hand-holding the fire hose. Part of the monitor's design includes an automatic shut-off system.

Plaintiffs contend that Plaintiff Ronald Mills, a firefighter for the City of Berea, was injured on October 13, 2011, when he attended a sales demonstration of the BlitzFire Monitor performed at the Berea Fire Department by Defendant Mark Riggsbee. For purposes of the demonstration, the monitor was attached to a 100-foot 2 ½" fire hose. The fire hose was then attached to a Berea Fire Department pumper truck. Mills was the engineer positioned on the pumper truck. During the demonstration, the fire hose came loose from the pumper truck, knocking Mills off his feet and causing him injury.

Plaintiffs claim that the fire hose detached from the truck because of "water hammer," a condition that the monitor was supposed to eliminate. "Water hammer" occurs from the back flow of water when a fire hose is shut off too quickly, causing a build-up of pressure. According to Plaintiffs, during the demonstration, Riggsbee struck the monitor on the asphalt, shutting off the water stream from the hose. Plaintiffs claim that this caused water hammer to occur. Mills testified that he observed water hammer after Riggsbee shut off the monitor the first time and he thought it was going to cause someone to get hurt. Accordingly (and without telling anyone, including Riggsbee, what he had seen or what he was going to do), he moved from the rear of the pumper truck to the side and put his hand on the discharge valve to shut the water off. While Mills was at the rear

of the pumper truck, Riggsbee kicked the monitor, making it shut off a second time. Plaintiffs claim that this created a second water hammer. According to Plaintiffs, the force from the water hammer caused the hose to tear apart from its coupling, blow out of the coupling at the pump panel and knock Mills off his feet, causing him injury.

Defendants deny that water hammer occurred and instead claim that the accident was caused by a faulty fire hose. The hose used in the demonstration was owned and maintained by the Berea Fire Department, not Defendants. Defendants also fault Mills for opting to attach the fire hose to the side panel of the pumper truck, which was in close proximity to the water pressure gauges and shutoff valve, rather than the rear of the pumper truck, which would have been out of harm's way. Defendants also argue that Mills testified that he was fully aware of water hammer prior to the demonstration and, further, that a fire hose can come loose if it water hammers. Defendants also criticize Mills' failure to tell anyone that he had allegedly seen water hammer occur and that he was going to move to the discharge valve to shut off the water.

Plaintiffs filed this action in Madison Circuit Court in Madison County, Kentucky on April 20, 2012 [DE #1]. Defendants subsequently removed the action to this Court on the basis of diversity jurisdiction, 28 U.S.C. §§ 1332, 1441, and 1446. Plaintiffs initially pursued this case as primarily a products liability case, bringing claims for negligence, negligent design and/or manufacture, selling and/or demonstrating the monitor in a defective condition, unreasonably dangerous to the users thereof, breach of express and implied warranty of merchantability and fitness for a particular purpose and failure to warn. [DE #1]. However, after Plaintiffs' breach of warranty claims were dismissed on Defendants' motion for summary judgment [DE #65], Plaintiffs abandoned the remaining products liability claims. At a November 15, 2013 hearing held on a

*Daubert* motion filed by Defendants, Plaintiffs repeatedly insisted that this case was only about negligence, and clarified that their sole claim in this case was whether Riggsbee negligently continued the demonstration of the BlitzFire Monitor after the first water hammer allegedly occurred.

Defendants have moved for partial summary judgment on Plaintiffs' failure to warn claim, as well as for a finding that Plaintiff Ronald Mills was negligent as a matter of law. Defendants have also moved for summary judgment on all of Plaintiffs' claims, on the grounds that Plaintiffs have failed to raise a genuine issue of material fact with respect to whether any alleged negligence by Defendants proximately caused Plaintiffs' injuries.

## II.    STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that

"there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## III. ANALYSIS

As noted above, although Plaintiffs initially pursued this case as primarily a products liability case, after Plaintiffs' breach of warranty claims were dismissed on summary judgment, Plaintiffs have taken the position that this claim was only about negligence. Specifically, at the November 15, 2013 hearing, in response to questioning by the Court, Plaintiffs' counsel clarified that Plaintiffs' sole claim in this case was whether Riggsbee negligently continued the demonstration of the BlitzFire Monitor after the first water hammer allegedly occurred. In light of this concession, Defendants' motion for partial summary judgment [DE #48] will be denied as moot to the extent that it seeks dismissal of Plaintiffs' failure to warn claim, as that claim is no longer pending.

In Kentucky, a claim for negligence "requires proof of: (1) a duty on the part of the defendant; (2) a breach of that duty; (3) a consequent injury, which consists of actual injury or harm; and (4) legal causation linking the defendant's breach with the plaintiff's injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003). Whether a "duty" exists is a question of law. "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.*, 724 S.W.2d 228, 229

(Ky.App. 1986). "Breach and injury, are questions of fact for the jury to decide." *Pathways, Inc.*, 113 S.W. 3d at 89 (citing *Lewis v. B & R Corporation*, 56 S.W.3d 432, 436 (Ky.App. 2001)). The final element, legal causation, is a mixed question of law and fact. *Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky. 1980).

In their motion for partial summary judgment [DE #48], Defendants also argue that they are entitled to partial summary judgment that Plaintiff Ronald Mills was negligent as a matter of law. Defendants fault Mills for electing to connect the fire hose to the side of the pumper truck, which was in close proximity to the water pressure gauges and the shutoff valve, rather than the rear, which would have been out of harm's way. Also, although Riggsbee asked Mills to charge the fire hose line with 150 PSI, Mills admitted that he believed the maximum safe water pressure for the length of hose being used was 115 PSI. Although Mills voiced this concern to Riggsbee, Mills did not stop the demonstration and instead proceeded forwarded with charging the fire hose line with 150 PSI. In addition, Mills testified that he was aware of the dangers of water hammer, including that it could cause a fire hose to come loose, and that he saw a water hammer occur after the monitor was shut off the first time. After seeing what he thought to be water hammer, without telling anyone, Mills proceeded to the side of the pumper truck to shut the water off. As he did so, the hose disconnected and he was knocked to the ground.

Defendants argue that these admitted facts establish that Mills was negligent as a matter of law. However, in Kentucky, the fact that the plaintiff may have breached his duty of care simply factors into the comparative negligence analysis that the jury must undertake. Under Kentucky law, comparative negligence supplanted contributory negligence with the Supreme Court's decision in *Hilen v. Hays*, 673 S.W.2d 713 (Ky. 1984). The Kentucky Legislature codified the comparative fault

doctrine in 1988 by the enactment of KRS § 411.182. "Comparative negligence 'calls for liability for any particular injury in direct proportion to fault.'" *Regenstrief v. Phelps*, 142 S.W.3d 1, 4 (Ky. 2004)(citing *Hilen*, 673 S.W.2d at 718 (Ky. 1984)). The Kentucky Supreme Court explained comparative negligence as follows:

> As opposed to contributory negligence, where the plaintiff's negligence can be a complete defense, comparative negligence shifts the focus of attention from liability to damages, and...divides the damages between the parties who are at fault. A finding of fault involves an examination of the duties of each party and a determination of whether those duties were breached.

*Regenstrief*, 142 S.W.3d at 4 (quotations and citations omitted).

Defendants' attempt to bar Plaintiffs' claim based on Ronald Mills' alleged negligence ignores the comparative fault analysis required by Kentucky law. Accordingly, Defendants' motion for partial summary judgment [DE #48] will be denied to the extent that it seeks judgment that Ronald Mills was negligent as a matter of law.

Defendants also filed a separate motion for summary judgment [DE #49] on the grounds that, without Plaintiffs' liability expert, Ron Hopkins,[2] Plaintiffs have no theory of recovery against the Defendants which is supported by any reliable evidence. Defendants argue that, without an expert, Plaintiffs cannot rebut the opinion of Defendants' expert that the accident was caused by the defective hose and coupling, not the Blitz Fire Monitor. Thus, according to Defendants, Plaintiffs' only possible claim is that Defendants should have foreseen that the hose and coupling were defective. However, Plaintiffs have not established any duty on the part of Defendants with respect to the hose and coupling, which Defendants did not own, manufacture or maintain.

---

[2]The Court entered an Order precluding Hopkins from testifying at trial on various grounds on March 20, 2014 [DE #105].

As noted above, in order for Defendants to be liable for negligence, Plaintiffs must show that Defendants' alleged negligence was the proximate or legal cause of Plaintiffs' injuries. *Pathways, Inc.*, 113 S.W.3d at 88-89. Under Kentucky law, in order to be the legal cause of another's harm, the defendant's actions must have been a "substantial factor" in bringing about the harm. *Id*. at 92. "The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." *Id*. ((quoting Restatement (2d) of Torts § 431 cmt. a).

Although legal causation is a mixed question of law and fact, "the court has the duty to determine 'whether the evidence as to the facts makes an issue upon which the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff." *Pathways, Inc.*, 113 S.W.3d at 92. Plaintiffs may use circumstantial evidence to establish legal causation. *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 219 (6th Cir. 1982). However,

> [w]hile reasonable inferences are permissible, a jury verdict must be based on something other than speculation, supposition or surmise. The type of evidence that will support a reasonable inference must indicate the *probable* as distinguished from a *possible* cause...There must be sufficient proof to tilt the balance from possibility to probability.

*Id.* (quoting *Huffman v. SS. Mary & Elizabeth Hospital*, 475 S.W.2d 631, 633 (Ky. 1972)(citations omitted)(emphasis in original). *See also See King v. Ford Motor Co.*, 209 F.3d 886, 893 (6th Cir. 2000).

In their response to Defendants' motion, Plaintiffs stand by their theory that Mark Riggsbee's actions while demonstrating the BlitzFire Monitor caused water hammer, which in turn caused the fire hose to detach from the pumper truck, causing Ronald Mills' injuries. As evidence of this theory of causation, Plaintiffs rely on testimony from Mark Riggsbee, as well as Shane Alcorn and Battalion Chief Scott Adams of the Berea Fire Department, as to the dangers of water hammer. However, putting aside any qualification issues with this testimony, testimony that water hammer is generally dangerous and could cause a hose to rupture or disengage does not support an inference regarding what occurred in *this* case. Plaintiffs also point to testimony from Riggsbee that, while the BlitzFire Monitor's safety shut-off valve may reduce the magnitude of a water hammer, he's "not convinced" that it completely prevents water hammer. Again, while this testimony suggests the theoretical possibility of water hammer in connection with the BlitzFire Monitor, it does not address whether or not water hammer occurred in this case.

Finally, Plaintiffs rely on testimony from Berea firefighters Alcorn and Michael Kearns that, in their opinions, water hammer occurred when Riggsbee shut off the BlitzFire Monitor during the demonstration and that this water hammer caused the hose to disengage from the coupling. However, Defendants filed a motion *in limine* to preclude Alcorn and Kearns, as well as Berea firefighters Roy Curtis, Ronald Mills, Adams and Lt. Stacy Quinley, from offering opinions as to causation at trial [DE #86]. These witnesses were not identified as expert witnesses at this trial on the issue of causation and defendants maintain that they may not offer opinion testimony that water hammer occurred and that this water hammer caused the hose to disengage.

Plaintiffs admit that these witnesses were not identified as experts. Rather, Plaintiff's maintain that these witnesses' testimony simply recounts each of their own observations and beliefs

as to what occurred on the date of the accident. Plaintiffs further argue that the testimony concerning these witnesses' understanding of water hammer is helpful to understand each witnesses' recounting of the events and is further helpful in the determination of the facts and issues in this case as to what caused the water "explosion" which led to Ronald Mills' injuries.

As Plaintiffs did not designate any of these witnesses as expert witnesses, and the deadline for doing so has long passed, none of these witnesses may offer expert opinion testimony. Fed. R. Civ. Pro. 26; Fed. R. Civ. Pro. 37(c)(1). As lay witnesses, however, these witnesses may offer opinion testimony to the extent that such testimony complies with the requirements of Rule 701. Under Rule 701:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. "In 2000, the drafters amended Rule 701 to foreclose lay witness testimony 'based on scientific, technical, or other specialized knowledge' – testimony more properly given by a qualified expert." *U.S. v. White*, 492 F.3d 380, 400-401. As explained by the Advisory Committee Notes to the 2000 Amendments to the rule:

> Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702. *See generally Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190 (3d Cir. 1995). By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an

> expert witness in the guise of a layperson. *See* Joseph, *Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure*, 164 F.R.D. 97, 108 (1996)(noting that "there is no good reason to allow what is essentially surprise expert testimony." and that "the Court should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process"). *See also United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997)(law enforcement agents testifying that the defendant's conduct was consistent with that of a drug trafficker could not testify as lay witnesses; to permit such testimony under Rule 701 "subverts the requirements of Federal Rule of Criminal Procedure 16(a)(1)(E)").

Fed. R. Evid. 701 Advisory Committee's Note (2000).

Here, Plaintiffs attempt to characterize these proposed witnesses' testimony that a water hammer occurred and that this water hammer caused the hose to separate from the coupling as testimony as to these witnesses' "own observations and beliefs," rather than their opinions. This distinction is dubious, to say the least. This Court does not believe that there is a significant difference between a witnesses' "beliefs" and their "opinions."

Plaintiffs also suggest that this testimony is not based on scientific, technical or specialized knowledge, as the Berea firefighters are testifying "based upon their everyday experience as firemen concerning their knowledge of water hammer and applying this knowledge to their own personal observations." For purposes of the Rules of Evidence on opinion testimony, "lay testimony 'results from a process of reasoning familiar in everyday life,' whereas 'an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.'" *U.S. v. White*, 492 F.3d at 401 (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992) and noting that the Advisory Committee incorporated the treatment of the distinction between lay witness testimony and expert testimony set forth in *Brown*). Here, it simply cannot be said that the conclusion that water hammer occurred is a result from a process of reasoning familiar in everyday life. "Water hammer" simply is not a concept that is common in everyday life. Indeed, it is doubtful that individuals without

firefighting training or extensive experience with water hoses would be at all familiar with the concept. To the extent that any of these proposed witnesses concluded that water hammer occurred and that this water hammer caused the hose to come loose, this conclusion could have only been the result of their experience as firefighters. This is precisely the type of opinion testimony that is precluded by Rule 701. Accordingly, although these witnesses may testify as to the facts that each of them observed on the day of the accident, but they may not offer their opinions as to whether water hammer occurred or as to whether this alleged water hammer caused the hose to separate from the fire truck. To permit otherwise would allow Plaintiffs to circumvent the requirements of the Federal Rules of Civil Procedure and the Federal Rules of Evidence. For these reasons, Defendants motion *in limine* to preclude Berea Firefighters from offering opinions as to causation [DE #86] will be granted to the extent that it seeks to preclude these witnesses from offering causation opinions.

Plaintiffs have not pointed to any other evidentiary support for their theory that Riggsbee's actions caused water hammer which, in turn, caused the fire hose to separate from the pumper truck. Nor do Plaintiffs have any other theory linking conduct by the Defendants to Plaintiffs injuries. Without any evidentiary support for Plaintiffs' causation theory, a jury verdict in Plaintiffs' favor could only be based on speculation, supposition or surmise, which is impermissible. *In re Beverly Hills Fire Litigation*, 695 F.2d at 219. Because there is no evidence that the conduct of the Defendants was a substantial factor in causing harm to Plaintiffs, a jury could not reasonably find in Plaintiffs favor on Plaintiffs' negligence claim. Accordingly, summary judgment in Defendants' favor is warranted.

Defendants further argue that, even if actions by Defendants were a legal cause of Plaintiffs' injuries, there still can be no liability because the actions of the manufacturer of the fire hose and

coupling were superseding causes. According to Defendants, the defective hose and coupling were the superseding cause of the hose coming loose from the pumper truck and relieve Defendants of any liability in this matter. However, because the Court finds that Plaintiffs have adduced no evidence of any negligence by Defendants, Defendants' argument that the defective hose and coupling were superseding causes need not be addressed.

IV.   **CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

1. Defendants' motion for partial summary judgment [DE #48] is **DENIED AS MOOT** to the extent that it seeks summary judgment on Plaintiffs' failure to warn claim and **DENIED** to the extent that it seeks a finding that Ronald Mills was negligent as a matter of law;

2. Defendants' motion *in limine* to preclude Berea Firefighters from offering opinions as to causation [DE #86] is **GRANTED** to the extent that it seeks to preclude these witnesses from offering causation opinions and **DENIED AS MOOT** to the extent that it objects to Plaintiffs' counsel reading these witnesses' depositions at trial;

3. Defendants' motion for summary judgment [DE #49] is **GRANTED**;

4. Defendants' motion *in limine* to exclude any evidence or reference that the Defendants' advertised and promoted the BlitzFire Monitor as eliminating water hammer [DE #73] is **DENIED AS MOOT**;

5. Judgment in favor of Defendants will be entered contemporaneously herewith;

6. This matter is **STRICKEN** from the active docket of the Court; and

7. This is a **FINAL AND APPEALABLE** Order and no just cause for delay exists.

This March 21, 2014.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY